**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:                                              Case No. 22-15714-PDR

**POMPANO SENIOR SQUADRON**                         Chapter 11
**FLYING CLUB, INC.,**                              (Subchapter V)

      Debtor.
_____/

❑ Check if this is an amended filing

Official Form 425A                                              v.2/20

# Plan of Reorganization for Small Business Under Chapter 11

**Debtor in Possession's Plan of Reorganization,**          **Dated October 24, 2022**

**Background for Cases Filed Under Subchapter V**

### A. Description and History of the Debtor's Business

The Debtor is a corporation which operates as a tax exempt not for profit entity. The debtor operates a flying club for the benefit of its members which includes the ownership, operation and lease of aircraft flown by its members for pleasure as well as instructional purposes. The debtor operates in Pompano Beach, Florida and its business premises (hanger) are leased.

### B. Liquidation Analysis

The Debtor's assets available for liquidation consist primarily of equity in its aircraft. The Debtor assert that a liquidation of the aircraft would likely generate equity which would pay less than 100% of creditor claims, but would pay a substantial distribution to unsecured creditors.  The Debtor has not conducted an appraisal of the aircraft. However, the Debtor estimates that its payment to unsecured creditors will yield 100% on allowed claims following objections, and accordingly the best interests test would be met. The estimated net equity value of the Debtor's aircraft is approximately $300,000. The other assets for liquidation are negligible or of inconsequential value. The amount of unsecured claims as filed equals $260,000 in the aggregate. Prior to avoidance, objection, or liquidation, the asserted liens on the aircraft are estimated to be approximately $200,000.  Accordingly, if such liens are deemed valid, then an estimated $100,000 would be available for distribution to unsecured creditors before accounting for costs of liquidation or administration in a chapter 7 resulting in distribution to unsecured of less than 38.4%. If all claims filed and balance of liens are aggregated as unsecured, then the distribution to unsecured creditors would be less than 73%.

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required   Plan payments and operate the debtor's business.

The Plan Proponent conservatively projects that its cash flow on a monthly basis will generate sufficient

cash flow to fund the quarterly payments proposed under the plan. The debtor's monthly operating reports as well as the debtor's projected budget demonstrate positive cash flow which exceeds the maximum payment to allowed claims required under the plan as proposed. The Plan Proponent's projected monthly cash flow is as follows:

|  | Rate | Q.ty | Total |  |  |  |  |
|---|---|---|---|---|---|---|---|
| Income monthly dues | 165 | 72 | $ 11,880.00 |  |  |  |  |
| Income flight hours (FH per each aircraft) |  | 25 | $ 8,950.00 |  |  |  |  |
| Total Income |  |  | $ 20,830.00 | plus 10% | $ 22,913.00 |  |  |
|  |  |  |  | minus 10% | $ 18,747.00 |  |  |
|  |  |  |  |  |  |  |  |
| Expenses flight Hr |  | 25 | $ 6,250.00 |  |  |  |  |
| Insurance |  |  | $ 3,510.97 |  |  |  |  |
| Tie Down and Hangar |  |  | $ 2,217.33 |  |  |  |  |
| Bank account fee |  |  | $ 25.00 |  |  |  |  |
| Schedule master |  |  | $ 143.33 |  |  |  |  |
| **Total Expenses** |  |  | $ 12,146.63 |  |  |  |  |
| Miscellaneous |  | 10% | $ 1,214.66 |  |  |  |  |
| **Total operating expenses** |  |  | $ 13,361.30 | plus 10% | $ 14,697.43 |  |  |
|  |  |  |  | minus 10% | $ 12,025.17 |  |  |
|  |  |  |  |  |  |  |  |
| Tptal profit (month) 2022 |  |  | $ 7,468.70 | Range (10%) | $ 4,049.57 | $ 8,215.57 |  |

This projection is based on an estimated average of flight hours per month which may change monthly.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these   projections or treatment under this Plan.**

### Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors from its ordinary monthly income.

This Plan provides for:          2 classes of secured claims;
                                 2 classes of non-priority unsecured clams.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this   Plan has valued at approximately 100 cents on the dollar. This Plan also provides for the payment of  administrative and priority claims. All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information  regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

| | | | |
|---|---|---|---|
| 2.01 | **Class 1**................................ | All allowed claims entitled to priority under § 507(a) of the Code (except administrative  expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). The Debtor does not have any priority claims. |
| 2.02 | **Class 2.1**.................................... | Secured Claim of Charly J. Guzman (Claim No. 6) |
|  | **Class 2.2**................................... | Lien claims of Sunwoord, Inc. |
|  | **Class 2.3** | Liens of Carl Kennedy, II |
| 2.03 | **Class 3**................................... | All non-priority unsecured claims allowed under § 502 of the Code. |
|  | **Class 3.1** | Proof of Claim of Paul Sanchez |
| 2.04 | **Class 4**................................... | Equity Members in the Debtor. |

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.<br><br>The Debtor has agreed to pay unpaid and outstanding fees of Lorium Law, if any, which remain at confirmation in equal monthly installments during the first 12 months following confirmation. |
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim, if any, will be paid (unclassified) will be paid in full at 3.25% interest within 5 years from the date of the Order for Relief in this case, in equal quarterly installments, pursuant to 11 U.S.C. §1129(a)(9)(C). The debtor is a tax exempt entity and does not anticipate priority tax claims. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. |

### Article 4: Treatment of Claims and Interests Under the Plan

4.01  **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Claims | N/A | N/A. This class excludes claims under Article 3. |
| Class 2.1 – Secured Claim of Charly Guzman (Claim 6) | Impaired | Charly Guzman filed a proof of claim asserting a secured claim in the amount of $50.545.15. The claim of Charly Guzman asserts to be secured by "Aircraft". While the claim states that it was not acquired from someone else, the basis for perfection is "Assignment of Note" by virtue of an asserted assignment from Carl Kennedy, II (see POC 6). Mr. Kennedy also signed the claim as the creditor's agent and accountant. The proof of claim contains an asserted assignment of note (without security), but no assignment contained on the purported FAA lien recording securing notes bearing dates 12/31/2017 and 9/24/2018. The Debtor disputes this claim as secured as well as in priority and amount. The liens of Kennedy were allegedly assigned to Sunwood, Inc., and no records assignment of lien is on file with the FAA to Guzman. To the extent any valid debt was assigned to Guzman, the Debtor asserts that it is unsecured. In the event, and to the extent that the claim is deemed secured, then the extent of such secured claim shall be paid quarterly payments of $2,500 which includes payment of any interest accrued at the contract rate of 4%, with any unpaid balance remaining to be paid in full 84 months following the Effective Date of the Plan. Payments on this claim shall be reserved pending the claim becoming an allowed claim. In the event and to the extent that the claim of Charly Guzman is allowed in whole or in part as an unsecured claim, and to the extent it is not equitably subordinated, then it shall be treated in the manner provided for general unsecured creditors. |
| Class 2.2 – Lien Claims of Sunwood, Inc. | Impaired | Sunwood, Inc. asserts that it is the assignee of the liens of Carl Kennedy II which it asserts are memorialized in FAA recordings, including a written assignment of lien executed by Carl Kennedy I March of 2022 and related to FAA convenyance number SD019705. The debtor has disputed the validity, priority and extent of such liens including through an adversary proceeding/removal of a state court litigation. In connection with this plan such liens are extinguished, waived, released, or otherwise discharged and avoided by operation of this plan and with the agreement of Sunwood, Inc. Additionally, Sunwood has filed a proof of claim (Claim 4) with regard to its judgment, which was secured pre-petition by judgment lien and funds held pursuant to a garnishment lien and released to the debtor post-petition. To the extent necessary, any garnishment lien or judgment lien is extinguished, waived, released, or otherwise discharged and avoided in consideration of and pursuant to the following payment terms of this plan:<br><br>Sunwood shall receive payment in full on account of its claim in quarterly payments beginning on January 1, 2023 and which shall pay the claim in full on or before 60 months following the Effective Date of the plan. Sunwood shall receive quarterly payments on account of its unsecured class 3 claim. To the extent and in the event that the quarterly payment on its class 3 claim is an amount less than 1/20th of its allowed claim (Claim 4), then the Debtor shall make a distribution to Sunwood in this class in the amount necessary to yield payment in full to Sunwood on its allowed claim in 20 equal quarterly payments and thus payment in full on or before 60 months from the Effective Date of the Plan. |

| | | |
|---|---|---|
| Class 2.3 – Liens of Carl Kennedy, II | Unimpaired | Carl Kennedy, II recorded liens against aircraft in February of 2020. Such liens are asserted in he FAA documentation to secure debts under notes bearing stated dates of 12/31/2017 and 9/24/2018. Mr. Kennedy is asserted to have assigned his lien rights to Charly Guzman (Class 2.1) and Sunwood, Inc. (Class 2.2). Mr. Kennedy did not file a proof of claim on account of these asserted liens as they have been assigned, and Mr. Kennedy has not asserted that he is otherwise entitled to treatment. Accordingly, the liens against aircraft recorded with the FAA by Charles Kennedy shall be receive the treatment in this plan afforded to the assignees in Class 2.2 and Class 2.3. Their shall be no further treatment or lien rights with respect to liens recorded by Charles Kennedy, II, if any, other than with respect to such treatment under Class 2.2 and 2.3. For the avoidance of doubt, liens in this class other than as provided in 2.2 or 2.3 of this plan. If any, shall be extinguished, avoided, and discharged. |
| Class 3 – General Unsecured Claims | Impaired | All non-priority unsecured claims allowed under § 502 of the Code. The holders of allowed unsecured claims shall receive distribution in the amount which is the lesser of 1) payment full on account of their claim by the receipt of 20 quarterly distributions in the amount of 1/20 of the amount of the allowed claim with such distributions beginning January 1, 2023 and continuing until the amount of the claim is paid in full or 2) pro rata quarterly distribution of $10,000. The Debtor estimates that payment under this paragraph will yield 100% to allowed claims after disputed claims are liquidated. |
| Class 3.1 – Proof of Claim of Paul Sanchez | Impaired | This class represents all claims of Paul Sanchez, including those scheduled by the Debtor as disputed on Schedule D (ECF 42, page 10 and 11), who filed an unsecured proof of claim, Claim Number 3, and who is a member and an insider of the debtor. Following objections, the allowed amount of the Claims of Paul Sanchez shall be treated and paid along with other Class 3 claims on account of any allowed claim. |
| Class 4 - Equity | Impaired | Property of the estate shall revest in the Debtor who shall retain its interests in property. The Debtor shall receive the proceeds of any property, including the proceeds of any sale under the plan following payment of claims pursuant to the treatment set forth in this plan. Equity interests in the Debtor shall be cancelled and each equity member shall receive, on account and in full consideration of its prior equity interest and any equity claim, 1 share in the reorganized debtor, which shall fully vest as of the Effective Date of the plan. Shareholders shall have no capital account or retained equity as of confirmation of the Plan. |

## Article 5: Allowance and Disallowance of Claims

5.01 **Claim Objections**   The Debtor in Possession and post confirmation reorganized Debtor shall file any objections to claims on or before 14 days after entry of the order confirming the Plan.

5.02 **Disputed claim**   A *disputed claim* is a claim that has not been allowed or disallowed by final non appealable order, and as to which either:

   (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

   (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.03 **Delay of distribution on a disputed claim.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. The Debtor shall reserve the amount payable with respect to any distribution on account of a disputed claim, with such reserve to be paid (without interest) upon the claim becoming an allowed claim.

5.04 **Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

6.01 **Assumed executory contracts and unexpired leases**

(a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

The Debtor assumes that certain "T-Hanger Lease Agreement" with Sheltair Pompano Beach dated March 18, 2021. The lease is current and there is no cure payment to be made in connection with assumption of the lease.

The Debtor assumes that certain "Tie Down Lease Agreement" with Sheltair Pompano Beach dated December 31, 2020. The lease is current and there is no cure payment to be made in connection with assumption of the lease.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

### Article 7: Means for Implementation of the Plan

Property of the estate shall revest in the debtor, and the treatment under the plan shall be funded by the Debtor's ordinary cash flow income. In the event that such income is insufficient to service the debt, the Debtor reserves the right to assess additional membership fees or equity contributions as provided by its By-Laws.

### Article 8: General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. |
| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.08 | **Notice** | Whenever the Plan requires notice to be given, such notice shall be given to the parties at their respective addresses unless a prior notice of change of address has been served indicating a new address. Notices to the Debtor shall be also transmitted. |

c/o Craig A. Pugatch<br>
**Lorium Law**<br>
101 NE 3rd Ave, Suite 1800<br>
Fort Lauderdale, FL 33301<br>
Email: capugatch@loriumlaw.com

| | | |
|---|---|---|
| [8.08 | **Default and Cure** | In the event of a default under this plan, the party against whom such breach occurred may serve a written notice of default upon the Debtor and counsel for the Debtor by mail and email, and the Debtor shall have 14 days to cure any alleged default. In the event of an uncured default, a creditor may enforce the rights expressly set forth in this plan, or if a remedy is not otherwise provided in this plan, such creditor may enforce the rights and debt set forth in this plan pursuant to applicable non-bankruptcy law. |
| [8.09 | **Retention of Jurisdiction** | The Bankruptcy Court, even after the case has been closed, shall have jurisdiction to the fullest extent of the law over all matters arising under, arising in, or relating to Debtor's chapter 11 case, including proceedings to: Ensure the consummation and implementation of the Plan; Enter such orders as may be necessary or appropriate to implement, consummate, or enforce the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan; Consider any modification of the Plan under the Bankruptcy Code; Hear and determine all Claims, controversies, suits and disputes against estate to the extent permitted under 28 U.S.C. § 1334; Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any and all objections to the allowance or priority of Claims; Hear, determine, and adjudicate any litigation or other claims or causes of action constituting property to be administered under the plan; Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the estate that may be pending on or commenced after the Effective Date; Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any entity's obligations incurred in connection with the Plan, or any other agreements governing, instruments evidencing, or documents relating to any of the foregoing, including the interpretation or enforcement of any rights, remedies, or obligations under any of the foregoing; Hear and determine all controversies, suits, and disputes that may arise out of or in connection with the enforcement of any and all subordination and similar agreements among various creditors pursuant to Section 510 of the Bankruptcy Code; Hear and determine all requests for compensation and/or reimbursement of expenses that may be made for fees and expenses incurred before the Effective Date; Enforce any Final Order, the Confirmation Order, the final decree, and all injunctions contained in those orders; Enter an order concluding and terminating this case; Correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order; Determine all questions and disputes regarding title to the Property; Classify the Claims of any Claim holders and the treatment of these Claims under the Plan, to re-examine Claims that may have been allowed for purposes of voting, and to determine objections that may be filed to any Claims; Take any action described in the Plan involving the post-confirmation Debtor, sale of Property, or the Disbursing Agent; Enter a final decree in Debtor's case as contemplated by Bankruptcy Rule 3022; Enforce, by injunction or otherwise, the provisions set forth in the Plan, the Confirmation Order, any final decree, and any Final Order that provides for the adjudication of any issue by the Bankruptcy Court; and Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated. |
| | | If the Bankruptcy Court abstains, exercises discretion, or is otherwise precluded from hearing any matter within the scope of its jurisdiction, nothing in the Plan shall prohibit or limit the exercise of jurisdiction by any other tribunal of competent jurisdiction. |

### Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:
    (i) imposed by this Plan; or
    (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:
    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,

Plan Proponent/Debtor in Possession

by

/s CRAIG A. PUGATCH, Florida Bar No.: 653381
*Counsel for Debtor in Possession*
**LORIUM LAW**
101 NE 3rd Avenue, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 462-8000
Facsimile: (954) 462-4300
capugatch@loriumlaw.com